## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Krishil S. Prasad, | ) |
|                Plaintiff, | ) **ORDER** |
| vs. | ) Case No.: 3:21-cv-83 |
| John D. Henson, Amanda S. Rockers, Dustin B. Kouba, Christopher E. Craige, Brian T. Kelly, John P. Roth, and United States of America, | ) |
|                Defendants. | ) |

Before the Court are four motions filed by either Plaintiff Krishil S. Prasad ("Prasad") or Defendant United States of America on behalf of Defendants John D. Henson, Amanda S. Rockers, Dustin B. Kouba, Christopher E. Craige, Brian T. Kelly, and John P. Roth (collectively, "the Government"). The motions are:

(1) Prasad's petition for a writ of habeas corpus, complaint for declaratory judgment, and petition for a writ of mandamus (the "Petition") filed on March 12, 2021 (Doc. No. 1);

(2) The Government's motion to dismiss for lack of jurisdiction, failure to state a claim, or in the alternative, for summary judgment filed on June 30, 2021 (Doc. Nos. 3, 5);

(3) Prasad's motion for summary judgment filed on October 26, 2021 (Doc. No. 10); and,

(4) Prasad's supplemental motion for summary judgment filed on December 7, 2021 (Doc. No. 15).

The parties have timely responded to each other's motions, and each of the four is ripe for review. For the reasons set forth below, the Court finds the Petition moot and dismisses it without prejudice. Consequently, the Court also finds as moot the remaining three motions. See Doc. Nos. 3, 5, 10, 15.

I.  **BACKGROUND**

Prasad was a service member in the United States Air Force.[1] In general terms, this case originated with a military case against Prasad, which began in 2015. Prasad's military case has a convoluted procedural history that the Court need not address with any particularity for purposes of this Order. See, e.g., Doc. No. 1-6, pp. 19-20 (where a military judge noted that the "complexity of the case is well documented in its Article 32 investigations, trial, and sentence rehearing"). Suffice it to say, the nature of Prasad's military case prompted him to file his Petition with this Court on March 12, 2021. Doc. No. 1.

  A.  **The Petition**

The Petition consists of three separate (though somewhat related) requests for relief: (1) a petition for habeas corpus; (2) a complaint for declaratory judgment; and, (3) a petition for a writ of mandamus. Id. Prasad first requests that the Court issue a writ of habeas corpus, ordering the Government to release him from Grand Forks Air Force Base and honorably discharge him from the Air Force. Id. at 2-3. He then requests that the Court enter a declaratory judgment finding that the Government "divested itself of personal jurisdiction over [him], such that he can no longer be court-martialed." Id. at 22. To that end, Prasad lists the following bases for divestiture: (1) the Government's "wrongful denial of the 'privileges, prerogatives, and emoluments of the status and rank' to which [Prasad] is entitled," (2) the Government's "failure to provide [Prasad] with any

---

[1] By way of background, Prasad enlisted in the Air Force in 2012 for a term of six years. Doc. No. 1, ¶ 6. In 2015, while he was a member of the Air Force, Prasad was court-martialed for sexual assault. Since then, Prasad's military case has been litigated through several appeals and authorized rehearings. In its final action, a military judge dismissed the military case against Prasad on November 17, 2021. The Government did not appeal.

2

duties commensurate of his rank," and (3) "the lack of intention to court-martial him at Grand Forks [Air Force Base]." Id.

Prasad additionally requests that the Court issue a writ of mandamus for the correction of records and restoration of his rights and privileges pursuant to Article 75 of the Uniform Code of Military Justice.[2] Id. at 3. Article 75 provides that "all rights, privileges, and property affected by an executed part of a court-martial sentence which has been set aside or disapproved . . . shall be restored[.]" Id. at 23. As such, Prasad asserts, among other things, that he is "entitled to have his military records corrected to accurately reflect the lack of conviction and sentence" and restoration of "all rights, privileges, and property affected by an executed part of a court-martial sentence that was set aside on appeal." Id. at 25.

B. **Post-Petition Evolution**

Since Prasad filed his Petition in March 2021, the factual landscape of the case has changed substantially. For example, the parallel military court proceeding spurred additional factual developments that led to the parties filing separate dispositive motions in this case. In these motions, the parties primarily briefed and argued whether the then-ongoing parallel military court case necessitated this Court's abstention under Schlesinger v. Councilman, 420 U.S. 738 (1975). The parties also noted post-Petition factual developments that, they argued, would substantially affect the Court's decision.[3] While the Court was considering these competing motions, Prasad filed a supplemental motion for summary judgment on December 7, 2021. Doc. No. 15. In that motion, Prasad represented that a military judge dismissed the parallel military case against Prasad

---

[2] As further support, Prasad also cites the Military Pay Act, 37 U.S.C. § 204(a)(2).

[3] For example, in his summary judgment motion filed on October 26, 2021, Prasad asserted he was "honorably discharged from the Air Force on August 31, 2021, effective at midnight, for completing his term of service." Doc. No. 10-1, p. 1. Notably, the date of Prasad's alleged discharge—August 31, 2021—is five months after he filed the Petition in this case.

for violation of double jeopardy on November 17, 2021—nearly eight months after the Petition was filed in this case.[4] Because most of the parties' briefing focused on whether the Court should abstain because of the parallel military case—which was now dismissed—the Court scheduled a status conference to discuss the shifting landscape of the case.

The day before the status conference, the Government filed its response to both Prasad's motion for summary judgment and his separate supplemental motion for summary judgment. Doc. No. 19. In its response, the Government asserted that "[i]n the intervening eight months" since Prasad filed his Petition, "the Air Force, without intervention from this Court, has honorably discharged [Prasad] from service, . . . and provided him with a final accounting of pay." Id. at 5. The Government also provided documents and affidavit testimony supporting its assertion that Prasad was now discharged: Prasad had received a DD-214, had been out processed, and received a completed final accounting and pay from the Defense Finance and Accounting Service ("DFAS").[5] See Doc. Nos. 19-21.

With this new information, the Court held the status conference with the parties on December 29, 2021. Doc. No. 22. At the status conference, the Court inquired whether the developments in the case mooted any of the four motions pending before the Court. Id. The parties agreed that the petition for writ of habeas corpus was moot. Id. The parties also agreed that the complaint for declaratory judgement was moot. Id. As to the writ of mandamus, however, Prasad argued that it was not moot, raising the issue of separation pay and his attorney fees and costs. In response, the Government contended that Prasad had not previously raised the issue of separation

---

[4] Notably, even with these significant factual developments, Prasad did not move to amend his Petition.

[5] The Defense Finance and Accounting Service ("DFAS") is response for calculating a service member's "final pay and accounting," which represents the service member's "final paycheck and includes any entitlement owed" with respect to time in service. Doc. No. 21, p. 2.

4

pay, and as a result the Government had not previously investigated it. Based on the parties' representations, the Court ordered supplemental briefing, emphasizing that after the supplemental briefing was filed the Court would consider the record closed and complete.

Shortly following the status conference—but well before the supplemental briefs were due—Prasad's counsel emailed the Government and the Court, that in her opinion, the motion for declaratory judgment was no longer moot because the "most recent DD214" at the time listed Prasad as "released from active duty" and transferred to the Air Force Reserves, meaning that "[i]n a technical sense, he still belongs to the Air Force." To that end, Prasad argues in his supplemental briefing that his request for declaratory judgment is not moot because the "Government can continue claiming it has personal jurisdiction" over him since he purportedly has not yet been effectively discharged. Indeed, Prasad affirmed that "DFAS is not able to calculate my final accounting of pay[.]" Doc. No. 23-2. In his supplemental briefing, Prasad also asserts that DFAS has not "provide[d] a final accounting" of pay and allowances and cannot do so "until the errors in his DFAS records are corrected." See Doc. No. 23, pp. 4-5. The errors that Prasad highlights pertain to purported debts that he argues should not exist—although he acknowledges that his DFAS records show that collection of these debts has been suspended. Id. at 7.

So, in sum, the parties disagree as to the mootness of the complaint for declaratory judgment and petition for writ of mandamus. The parties agree only the petition for the writ of habeas corpus is moot.

II.     **STANDARD OF REVIEW**

"Federal courts must possess jurisdiction before reaching the merits of a case." Religious Sisters of Mercy v. Azar, 513 F. Supp. 3d 1113, 1134 (D.N.D. 2021), judgment entered sub nom. Religious Sisters of Mercy v. Cochran, No. 3:16-CV-00386, 2021 WL 1574628 (D.N.D. Feb. 19,

2021) (internal citation omitted). "A federal court lacks subject-matter jurisdiction if a claim becomes moot." Delorme-Gaines v. Sweeney, No. 1:20-CV-81, 2021 WL 4165379, at *3 (D.N.D. Sept. 13, 2021) (citing Dalton v. JJSC Properties, LLC, 967 F.3d 909, 913 (8th Cir. 2020)). "If an issue becomes moot in the Article III sense, a Court has no discretion and must dismiss the case for lack of jurisdiction." Delorme-Gaines, 2021 WL 4165379, at *3.

According to the Eighth Circuit, "a case becomes moot 'when changed circumstances already provide the requested relief and eliminate the need for court action.'" Prowse v. Payne, 984 F.3d 700, 702 (8th Cir. 2021) (quoting Hillesheim v. Holiday Stationstores, Inc., 903 F.3d 786, 791 (8th Cir. 2018)). Stated another way, a "case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Delorme-Gaines, 2021 WL 4165379, at *3. (internal citations and quotations omitted). "Further, a real, live controversy must exist at all stages of review, not merely when the complaint is filed." Hein v. Arkansas State Univ., 972 F. Supp. 1175, 1182 (E.D. Ark. 1997) (emphasis in original); see also Kaluba N. v. Immigr. & Customs Enf't, No. 20-CV-1856 (NEB/ECW), 2020 WL 7632148, at *1 (D. Minn. Nov. 12, 2020), report and recommendation adopted sub nom. Kaluba N. v. Immigr. & Customs Enf't (ICE), No. 20-CV-1856 (NEB/ECW), 2020 WL 7624841 (D. Minn. Dec. 22, 2020) (explaining "'[A]n actual controversy must exist not only at the time the complaint is filed, but through all stages of the litigation.'" (quoting Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013)).

III.  **LEGAL DISCUSSION**

Given the significant change in the factual landscape of this case since its origins in March 2021, the Government properly raises the question and doctrine of mootness. As an initial matter, per the parties' stipulation at the December 29, 2021 status conference, the Court finds as moot

6

Prasad's petition for habeas corpus. Doc. No. 22. Thus, the Court will review Prasad's two remaining requests—his complaint for declaratory judgment and petition for a writ of mandamus—for mootness.

### A. Complaint for Declaratory Judgment

Turning first to Prasad's complaint for declaratory judgment, under the Declaratory Judgment Act, "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. The "statutory standard for determining whether or not a controversy exists" under the Declaratory Judgment Act "is the same as that under the Constitution." Cass Cty. v. United States, 570 F.2d 737, 739 (8th Cir. 1978) (citing cases). To that end, the Court considers "whether a 'controversy' within the meaning of the Declaratory Judgment Act and Article III of the Constitution exists on the basis of the complaint as written." Id. As well-stated by the Eighth Circuit:

> The difference between an abstract question and a "controversy" contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

Id. at 739-40 (quoting Maryland Casualty Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941)); see also Ohio Farmers Ins. Co. v. Graham Const. Servs., Inc., No. 4:12-CV-021, 2012 WL 4049849, at *2 (D.N.D. Sept. 13, 2012) (quoting Cass Cty., 570 F.2d at 739-40).

However, "it is well-settled 'that district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise

satisfies subject matter jurisdictional prerequisites.'" Karsjens v. Jesson, 6 F. Supp. 3d 958, 971 (D. Minn. 2014) (citing Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995); Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 126 (1968); Brillhart v. Excess Ins. Co., 316 U.S. 491, 494 (1942)); see also Aaran Money Wire Serv., Inc. v. United States, No. 02CV789JMR/FLN, 2003 WL 22143735, at *8 (D. Minn. Aug. 21, 2003) (explaining that "even if these cases remained live, the Court might well decline to exercise its declaratory power, which is always discretionary." (citing Wilton, 515 U.S. at 282).

1. **Mootness**

The Court will first consider whether the complaint for declaratory judgment in the Petition is moot. In essence, Prasad argues that his request for declaratory judgment is not moot because the "Government can continue claiming it has personal jurisdiction" over him since he purportedly has not yet been effectively discharged[6] because DFAS has not, according to Prasad, "provide[d] a final accounting" of pay and allowances and cannot do so "until the errors in his DFAS records are corrected." See Doc. No. 23, pp. 4-5. The Court need not decide whether DFAS has completed a final accounting in this case, however, because Prasad's complaint for declaratory relief is moot.

In the Petition, Prasad asserts that the Government "divested itself of personal jurisdiction over [Prasad], such that he can no longer be court-martialed." Doc. No. 1, p. 22. To that end, he lists the following three bases for divestiture: (1) the Government's "wrongful denial of the 'privileges, prerogatives, and emoluments of the status and rank' to which [Prasad] is entitled,"

---

[6] The Court notes that Prasad's current position is not entirely consistent with past arguments he has raised in this case. See Doc. No. 10-1, pp. 1, 6-13, 14 (In his motion for summary judgment, Prasad argues there are three reasons why the Air Force lost jurisdiction over him. At that time, one of Prasad's arguments for loss of jurisdiction was that the "Air Force discharged [him] almost two months ago, resulting in the loss of personal jurisdiction" because "[u]nder the totality of the circumstances, it would be against reason and policy to hold that the Air Force still maintains personal jurisdiction over him.").

(2) the Government's "failure to provide [Prasad] with any duties commensurate of his rank," and (3) "the lack of intention to court-martial him at Grand Forks [Air Force Base]." Id.

Since the filing of the Petition, however, each of these alleged bases for divestiture has either occurred or is no longer applicable due to changed circumstances. For instance, Prasad's status and rank has been restored. See Doc. No. 8 ("I have examined Air Force pay records and confirmed that SrA Prasad is being paid correctly in accordance with his status as a Senior Airman (also referred to as an E-4)."). Additionally, there is no evidence that the Government is failing to provide Prasad with any duties commensurate to his rank; to the contrary, the evidence before the Court suggests that, at least in the Government's perspective, Prasad was separated with an honorable discharge and Prasad can "return to California (or wherever else he chooses to go)." See Doc. Nos. 19, 20. Lastly, and most notably, the Government already attempted to court-martial Prasad at the Grand Forks Air Force Base but was unsuccessful. See Doc. No. 15-3. Indeed, a military judge dismissed the parallel military case against Prasad for violation of double jeopardy on November 17, 2021—nearly eight months after the Petition was filed. Accordingly, the change in facts since the filing of the Petition have provided Prasad with the relief he requested in his complaint for declaratory judgment. Prowse, 984 F.3d at 702 (explaining "a case becomes moot 'when changed circumstances already provide the requested relief and eliminate the need for court action.'"). Accordingly, the Court finds Prasad's complaint for declaratory judgment moot. See Hein, 972 F. Supp. at 1182 (explaining "a real, live controversy must exist at all stages of review, not merely when the complaint is filed.").

In his supplemental briefing, Prasad argues the case is not moot because of an alleged delay in the final accounting and pay, which he asserts is "the third element required" for an effective discharge. Doc. No. 23, pp. 4-5. Prasad argues that this delay necessitates the Court entering

9

judgment declaring that the Air Force no longer maintains jurisdiction over him. Id. at 4. Again, the Court must consider the Petition as originally written. And absent from the Petition is the assertion that the Government does or does not have jurisdiction over Prasad because of any alleged discharge. Notably, the date of Prasad first alleged he was discharged—August 31, 2021—was approximately five months after he filed the Petition in this case. As such, the Court cannot consider whether Prasad was allegedly discharged on August 31, 2021 (or any date thereafter), as it is not included in the complaint for declaratory judgment in the Petition. See Cass Cty., 570 F.2d at 739 (explaining "whether a 'controversy' within the meaning of the Declaratory Judgment Act and Article III of the Constitution exists on the basis of the complaint as written.").

Likewise, the Court will not consider whether a purported delay in the final accounting and pay necessitates the Court entering judgment declaring that the Air Force no longer maintains jurisdiction over Prasad, because such information or allegations are not present in the Petition. The Court makes no judgment on these claims except to say that Prasad did not raise them in the Petition and that they seem to be entirely related to the change in facts after the Petition was filed (for example, Prasad's alleged discharge or purported issues with final accounting of pay). Though these factual allegations may form the basis of another lawsuit, they are not properly before the Court in this Petition, and they do not overcome mootness. See Prowse, 984 F.3d at 703.

    2.    **Voluntary Cessation**

In response, Prasad argues that even "if the Court deems this issue moot," that "'cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case.'" Doc. No. 23, p. 5 (internal citation omitted). To Prasad, dismissing his claims would allow the

Government to evade judicial review of their actions and then repeat their misconduct. Id. at 6. The Court disagrees. As recently articulated by the Eighth Circuit:

> Of course, a defendant cannot always moot a case simply by voluntarily ceasing its unlawful conduct after the plaintiff files suit. See Nike, 568 U.S. at 91, 133 S. Ct. 721 (citing City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289, 102 S. Ct. 1070, 71 L. Ed. 2d 152 (1982)); Hillesheim, 903 F.3d at 791 ("[V]oluntary cessation of a challenged practice does not necessarily moot a case."). "Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." Nike, 568 U.S. at 91, 133 S. Ct. 721. Yet, "[a] case might become moot if subsequent events ma[k]e it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 189, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000) (quoting *703 United States v. Concentrated Phosphate Export Ass'n, 393 U.S. 199, 203, 89 S. Ct. 361, 21 L. Ed. 2d 344 (1968)).

Prowse, 984 F.3d at 702-03. A "defendant 'faces a heavy burden' to establish mootness by way of voluntary cessation, . . . , but the standard is slightly less onerous when it is the government that has voluntarily ceased the challenged conduct." Id. at 703 (internal citations and quotations omitted); see also Dixon v. City of St. Louis, No. 4:19-CV-0112-AGF, 2021 WL 4709749, at *8 (E.D. Mo. Oct. 8, 2021) (explaining "the standard for mootness is somewhat less onerous when it is the government that has ceased the challenged conduct").

The Court recognizes Prasad's concern that the Government may, at some unspecified point in the future, claim it has personal jurisdiction over him. But the post-Petition evolution of this case suggests otherwise. First, the Government did not voluntarily cease claiming it had jurisdiction. Rather, nearly eight months after the Petition, a military judge dismissed the parallel military case for violation of double jeopardy. Only after this adverse ruling—which the Government did not appeal—did the Government take action to discharge Prasad. The Government, therefore, could not now claim personal jurisdiction over Prasad for the events that served as the basis for the military case. As such, this is not a case where the Government can

simply pick up where it left off, repeating the cycle until it achieves its allegedly unlawful end. Accordingly, the Government did not simply voluntarily cease its allegedly unlawful conduct after Prasad filed his Petition.

Additionally, even if the Government attempted to claim personal jurisdiction over Prasad again in the future, it would necessarily be based on a different set of facts and legal authority and be allegedly unlawful for different reasons than Prasad alleges here. Accordingly, under the facts of this case, the Government has established that the any alleged wrongful claim of personal jurisdiction based on the events surrounding this case "could not reasonably be expected to recur."

3. **Sufficient Immediacy and Reality**

Even assuming *arguendo* that the complaint for declaratory judgment is not moot (which it is), there is not sufficient "immediacy and reality" that the Government will claim personal jurisdiction over Prasad. Prasad is not arguing that the Government is currently claiming jurisdiction over him or will do so in the immediate future. In fact, he even acknowledges that "the government now disavows an intent to exercise jurisdiction" over him. Doc. No. 23, p. 5. Instead, he only claims generally that without this declaratory judgment the Government "can"—at some undetermined point in time—claim it has jurisdiction over him. Id. at 4; Doc. No. 23-2 (asserting that without a final accounting of pay, the Air Force "could still try to claim jurisdiction" over him). Therefore, there is no evidence in the record of any real or immediate attempt of the Government to try to claim personal jurisdiction over Prasad. As such, the Court declines to exercise its discretion to issue a declaratory judgment. See Aaran Money Wire Serv., Inc., 2003

WL 22143735, at *8 (explaining "even if these cases remained live, the Court might well decline to exercise its declaratory power, which is always discretionary." (internal citation omitted)).

### B. Petition for Writ of Mandamus

The final issue before the Court is whether Prasad's petition for writ of mandamus is moot. The statutory basis for the writ of mandamus is 28 U.S.C. § 1361, which states that the Court has "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." According to the Eighth Circuit, "Mandamus may issue under § 1361 against an officer of the United States only in extraordinary situations and when the plaintiff can establish (1) 'a clear and indisputable right to the relief sought,' (2) the state officer 'has a nondiscretionary duty to honor that right,' and (3) there is 'no other adequate remedy.'" Mitchael v. Colvin, 809 F.3d 1050, 1054 (8th Cir. 2016).

Regarding his petition for a writ of mandamus, Prasad concedes that the issue regarding his back pay is now moot.[7] Doc. No. 22, p. 1. However, he argues that his petition for writ of mandamus is not moot because of alleged errors with his final accounting and pay. Doc. No. 23, p. 7. These arguments are very similar (if not the same) to the arguments Prasad raised regarding his declaratory judgment complaint. See Doc. No. 23, p. 7 ("For the same reasons discussed supra, the issues with correcting [Prasad's] records are not 'moot.'"). As such, the Court incorporates by reference its analysis in Section III.A.1 above.

Additionally, Prasad requests in the Petition that the Court issue a writ of mandamus for the correction of records and restoration of his rights and privileges pursuant to Article 75 of the

---

[7] At the status conference Prasad raised the issue of whether he was entitled to separation pay. Doc. No. 22, p. 1. In his subsequent briefing, however, Prasad acknowledges that the alleged errors in his final accounting and pay "may no longer affect [his] backpay and separation pay[.]" Doc. No. 23, p. 7.

Uniform Code of Military Justice. Doc. No. 1. Article 75 provides that "all rights, privileges, and property affected by an executed part of a court-martial sentence which has been set aside or disapproved . . . shall be restored[.]" Id. at 23. Indeed, Prasad alleges that he is "entitled to have his military records corrected to accurately reflect the lack of conviction and sentence." Id. at 25. Therefore, the gravamen of the writ of mandamus as set forth in the Petition related to correction of Prasad's records based on his court-martial proceedings. See id. at 22-25.

In his most recent briefing, however, Prasad does not claim that his alleged errors with the DFAS records were "affected by an executed part of a court-martial sentence." Instead, Prasad merely highlights, among other things, that his DFAS records show purported debts that he argues should not exist—although Prasad acknowledges that his DFAS records show that collection of these debts has been suspended. Doc. No. 23, p. 7. These concerns do not match those that Prasad originally raised in the Petition. As such, the Court cannot "grant any effectual relief" to Prasad, even if he were to prevail, based on the specific bases he raised in the Petition. The Court, therefore, finds as moot Prasad's petition for writ of mandamus. See Delorme-Gaines, 2021 WL 4165379, at *3 ("A case becomes moot, however, only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.")

Although the Court need not reach the merits of Prasad's petition for a writ of mandamus, Prasad's substantive arguments for relief are unconvincing. The Court is not persuaded that this is one of those "extraordinary circumstances" that warrants a petition for a writ of mandamus because, among other things, Prasad cannot establish that there is there is "no other adequate remedy." See Mitchael, 809 F.3d at 1054. There is no evidence before the Court that Prasad has no other adequate remedy for the need to correct alleged errors with his final accounting and pay. To the contrary, if he disagrees with the DFAS final accounting and pay, there are "administrative

processes in place to remedy those errors." Doc. No. 8, ¶ 4. And, once the administrative process is exhausted, Prasad could seek remedies in the Court of Federal Claims. See Sharpe v. United States, 134 Fed. Cl. 805, 813-14 (2017), aff'd, 935 F.3d 1352 (Fed. Cir. 2019); Antonellis v. United States, 723 F.3d 1328, 1332-33 (Fed. Cir. 2013); Parker v. United States, 72 Fed. Cl. 151, 154 (2006), dismissed, 226 F. App'x 1004 (Fed. Cir. 2007).

Nevertheless, because the petition for a writ of mandamus is moot, the Court is precluded from reaching the merits of Prasad's requested relief therein. Having found as moot Prasad's petition for habeas corpus, complaint for declaratory judgment, and petition for writ of mandamus as set forth in the Petition, the Court dismisses the Petition in its entirety, without prejudice.[8] See Delorme-Gaines, 2021 WL 4165379, at *3. Nothing in this Order precludes Prasad from filing a new Petition if he so chooses.

IV. **CONCLUSION**

The Court has carefully reviewed the entire record, the parties' filings, and the relevant law. For the reasons set forth above, the Court **FINDS AS MOOT** Prasad's Petition (Doc. No. 1) and **DISMISSES** it without prejudice. The Court also **FINDS AS MOOT** the following motions: the Government's motion to dismiss for lack of jurisdiction, failure to state a claim, or, in the alternative, for summary judgment (Doc. Nos. 3, 5); Prasad's motion for summary judgment (Doc. No. 10); Prasad's supplemental motion for summary judgment (Doc. No. 15).

**IT IS SO ORDERED**.

---

[8] The Court notes that Prasad's claims for attorney costs and fees does not survive, nor save, the Court's finding the Petition as moot. See Doe v. Mayorkas, No. 20-CV-985 (ECT/BRT), 2021 WL 411206, at *4 (D. Minn. Feb. 5, 2021) ("Moreover, it is well-established that '[a]n interest in attorney's fees is insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim.'" (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 107 (1998) (cleaned up); Thole v. U.S. Bank N.A., 140 S. Ct. 1615, 1619 (U.S. 2020)).

Dated this 10th day of March, 2022.

/s/ Peter D. Welte
Peter D. Welte, Chief Judge
United States District Court